UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMANDA EARLS MCDONALD, ET AL.** | CIVIL ACTION |
| VERSUS | NO. 11-0598 |
| **TARGET CORPORATION OF MINNESOTA, ET AL.** | SECTION: "C" (4) |

## ORDER

Before the Court is Defendant, Target Corporation of Minnesota's, ("Target") **Target Corporation of Minnesota's Motion for Protective Order to Limit Discovery of Non Relevant Information Regarding Target's Video Security System (R. Doc. 25)**, seeking a protective order from this Court limiting Plaintiffs, Amanda Earls McDonald and Cedric McDonald, Sr.'s, (collectively the "McDonalds") discovery request for information about Target's video security system. The McDonalds oppose the motion. (R. Doc. 28). The motion was heard by oral argument on Wednesday, August 8, 2012.

### I.     Factual Background

The McDonalds filed this personal injury lawsuit in the 32nd Judicial District Court for the Parish of Terrebonne, Louisiana after Amanda Earls McDonald slipped and fell in the Martin Luther King Boulevard Target store in Terrebonne Parish, Louisiana ("Target Store"). (R. Doc. 1-5, p. 3). On March 16, 2011, the case was removed to this Court. (R. Doc. 1). The McDonalds' Complaint alleges that on November 28, 2009, Ms. McDonald fell in aisle E4 ("E4") "due to a slipping hazard on the store floor." *Id.* The McDonalds allege Ms. McDonald suffered a neck injury as a result of the

fall, which will require future medical treatment, and that her injury was proximately caused by Target's negligence. *Id.* at pp. 3-4. Accordingly, the McDonalds seek damages for, *inter alia*, past and future medical expenses, pain and suffering, mental pain and anguish, lost earnings, disability, and impairment of enjoyment of living. *Id.* at 4. Cedric McDonald, Sr. also seeks damages on behalf of himself and their children for loss of consortium. *Id.* at 5.

As to the instant motion, on March 19, 2012, Target argues that the McDonalds issued a Federal Rule of Civil Procedure ("Rule") 30(b)(6) deposition notice for Target's corporate deposition on an unspecified date and at an unspecified time. (R. Doc. 25-5). The notice of deposition included twenty (20) topics. Also attached to the notice of deposition were twenty (20) separate requests for documents.

In response to the notice of deposition, counsel for Target sent counsel for the McDonalds a letter in which he objected to the notice of deposition due to (1) its lack of relevance, (2) its seeking confidential trade secrets, and (3) its seeking sensitive, confidential, commercial and proprietary information. Target stated that its 30(b)(6) expert would not answer questions regarding the following subject areas:

> Information requests as to the installation of the cameras:
> The Room/office where the security footage is reviewed
> Maintenance log
> Record Keeping protocol of footage acquired:
> Monitoring of security cameras
> Positioning/location of security cameras on the location:
> Area/departments of the location under video surveillance
> Purpose of the security cameras at the location
> The company that installed the security cameras
> The make and model of the security cameras at the location
> Photographs of the security cameras at the location
> The number of security cameras in the location

(R. Doc. 25-5, pp. 1-2). As to the instant motion, Target seeks a protective order from this Court

2

limiting the McDonalds' discovery of information about Target's video security system. (R. Doc. 25-2, p. 1). Target contends that no video footage was taken on the night in question. *Id.* It further argues that the McDonald's deposition notice seeks information about the security system that is irrelevant, and that the information sought constitutes trade secrets. *Id.* at 5.

The McDonalds oppose the motion and argue that the facts surrounding the installation of the security camera will reveal whether any cameras were installed in the vicinity of E4, and the existence, preservation or destruction of any video footage. (R. Doc. 28, pp. 7-8). They also argue that they are entitled to discover the areas of Target were under surveillance, as well as how many cameras are in the store. *Id.*

## II. **Standard of Review**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery

3

sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending-or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .

Fed.R.Civ.P. 26(c)(1). Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998); *see also Baggs v. Highland Towing, L.L.C.*, No. 99-1318, 1999 WL 539459, at *2 (E.D. La. July 22, 1999) (Rule 26(c)(2) orders may be issued only when the moving party makes "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.").

### III. Analysis

In support of its motion, Target argues that the requested information compromises the security of Target. (R. Doc. 25, p. 1). It further contends that the incident was never recorded by the

4

store's security system as the aisle of the alleged incident was not under surveillance. (R. Doc. 25-2, p. 1). It argues that the McDonalds have been informed of this fact, thus any requests for information or documents about the video surveillance system are irrelevant. *Id.* It further argues that public knowledge regarding the installation of its cameras, the location of areas under surveillance, repair and maintenance of cameras, and record-keeping for the same compromises Target security. *Id.* at 5. Accordingly, it argues that the relevant areas of inquiry should be limited to whether the aisle in question was under surveillance at the time of the alleged incident. *Id.* at 6.

In opposition, the McDonalds argue that information and documents related to Target's video surveillance system and record keeping system are relevant to their claims. (R. Doc. 28, pp. 7-8). They contend that facts surrounding the installation of the security camera will reveal whether any cameras were installed in the vicinity of E4. *Id.* They also contend that information about Target's record keeping protocol with reveal the existence, preservation or destruction of any video footage of the incident in question. *Id.* at 8. They argue that the disclosure of the make, model, and location of the camera will reveal their specifications, the quality of the video, and the recording capacity. *Id.* They also contend that it is vital to know whether captured footage is immediately sent to a network hard drive. *Id.* The McDonalds also point to newspaper articles highlighting Target's sophisticated video surveillance system to support their position that much of the information requested is not confidential. *Id.* at 4-7.

At oral argument, the Court considered the areas of inquiry which Target stated it would not divulge during the 30(b)(6) deposition. As noted above, these areas were:

> Information requests as to the installation of the cameras:
> The Room/office where the security footage is reviewed
> Maintenance log
> Record Keeping protocol of footage acquired:
> Monitoring of security cameras

5

>   Positioning/location of security cameras on the location:
>   Area/departments of the location under video surveillance
>   Purpose of the security cameras at the location
>   The company that installed the security cameras
>   The make and model of the security cameras at the location
>   Photographs of the security cameras at the location
>   The number of security cameras in the location

The Court asked Target about a security camera which apparently covered a portion of E4. The Court inquired as to whether an employee of Target could produce an affidavit stating that E4 was not under video surveillance. Target responded and argued that the Affidavit of John Burgbacher ('Burgbacher Affidavit) adequately addressed the issues. The Court stated that the Burgbacher Affidavit did not address the relevant issues, namely whether a "black bubble" in an adjacent store aisle, which might have contained a video camera, in fact contained one; and even if it had contained a camera, that the camera's scope of surveillance was sufficient to include E4.[1] Therefore, it was an open question as to whether a material by discoverable fact, i.e., security footage, actually existed. Target did not disagree with the Court, but stated that it was merely trying to limit the scope of discovery to what was relevant to the accident without compromising Target's security system. In opposition, McDonald briefly agreed with the Court that Target's request for a protective order was broad.

The Court then granted the protective order on a limited basis. Specifically, the Court found that the topics of the deposition could be limited "geographically" to any video surveillance of E4, as well as the two aisles adjacent to E4.[2] The Court further noted that as to availability of the video footage, the ultimate issue was whether (1) there was footage, (2) whether the footage still existed,

---

[1] At oral argument, Target explained that "black bubbles" were present in Target stores, affixed to the ceiling. Some, but not necessarily all, of these "black bubbles" contained security cameras.

[2] Here, the Court defines "adjacent" in its typical sense, i.e., one aisle to the immediate right of E4, and one aisle to the immediate left of E4.

and (3) can the footage be produced. All other information arising in connection with the McDonalds' 30(b)(6) request was irrelevant and therefore quashed.

As to specific areas Target asserted that it would not provide information in its July 17, 2012 letter to the McDonalds (R. Doc. 25-7, p. 1), the Court ruled as follows.

1. **Information requests as to the installation of the cameras:**
   **The Room/office where the security footage is reviewed**
   **Maintenance log**

The Court found that discussion of these topics would be overbroad and/or irrelevant, and granted Target's Protective Order accordingly.

2. **Record Keeping protocol of footage acquired:**
   **Monitoring of security cameras**

The Court found that discussion would be permissible as to any video surveillance footage of E4, as well as the two aisles adjacent to E4; further, the Court found as relevant the following: whether the Target's security cameras periodically "re-record" over the footage they record; and, to the degree the footage was still available, whether the information was stored offsite.[3]

3. **Positioning/location of security cameras on the location:**
   **Area/departments of the location under video surveillance**

The Court found that questions as to any surveillance of E4, as well as the two aisles adjacent to E4, would sufficiently address the issue.

4. **Purpose of the security cameras at the location**
   **The company that installed the security cameras**
   **The make and model of the security cameras at the location**
   **Photographs of the security cameras at the location**
   **The number of security cameras in the location**

The Court did not specifically pass on these issues. However, the applicability of these

---

[3]Although Target stated that the video footage was not *monitored* offsite, Target did not state that the footage was not *stored* offsite.

requests was adequately disposed of in the Court's statements regarding what deposition testimony was relevant, both as to both the geographical location of the accident, as well as the availability of video surveillance footage. Specifically, information regarding the number of security cameras in the location, photographs of the security cameras at the location, and the make and model of the security cameras at the location would all be relevant. Information regarding the purpose of the security cameras would also be relevant, but only as to questions regarding cameras as that particular Target store, and not with respect to more general questions regarding Target's company-wide security policies. However, information pertaining to the company that installed the security cameras is irrelevant.

Target also requested that the 30(b)(6) deposition be conducted under seal. The Court found that it had already sufficiently limited the scope of the deposition, and therefore denied Target's request.

Target also requested that limitations on the amount of any video footage be established. The Court ordered that any production of video footage from Target's security cameras, however stored, would be limited to footage taken on November 28, 2009 which could have captured the incident in question. "Capture" was defined as any surveillance cameras installed in the "black bubbles" above E4, or either of the two aisles adjacent to E4.

### IV.     Conclusion

Accordingly,

**IT IS ORDERED** that Defendant, Target Corporation of Minnesota's, ("Target") **Target Corporation of Minnesota's Motion for Protective Order to Limit Discovery of Non Relevant Information Regarding Target's Video Security System (R. Doc. 25)** is **GRANTED IN PART** and **DENIED IN PART**.

It is **GRANTED** as to Target's request that the deposition of Target's 30(b)(6) representative be topically limited, as stated in this Order. The deposition topics, and documents to be produced, at the 30(b)(6) deposition are limited as follows:

1. **Location**. Relevant "location" deposition testimony, documents, and other information, including video surveillance footage, pertain to only the following topics: any and all video surveillance cameras which are or may have been affixed above the aisle of the Martin Luther King Boulevard Target store in Terrebonne Parish, Louisiana ("Target Store"), in which the alleged November 28, 2009 accident occurred ("E4"), as well as and any all video surveillance cameras which are or may have been affixed above the two aisles adjacent to E4.

2. **Availability**. Relevant "availability" deposition testimony, documents, and other information, including video surveillance footage, pertain to only the following: video surveillance footage which may have been recorded at the Target Store on video surveillance cameras located in E4, as well as the two aisles adjacent to E4, as well as whether (1) the footage was recorded, (2) the continuing existence of the footage, in any stored form, and (3) the feasibility of production of that footage.

3. **Time.** Relevant "time: video surveillance footage to be produced is limited to: footage taken at the Target Store on November 28, 2009.

It is **DENIED** in all other respects.

New Orleans, Louisiana, this 5th day of November 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**